Certiorari Denied, June 2, 2010, No. 32,371
Certiorari Granted, June 2, 2010, No. 32,374

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-049**

**Filing Date: April 1, 2010**

**Docket No.  28,599**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**SAUL NEVAREZ,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**     After a jury trial in the Bernalillo County Metropolitan Court, Saul Nevarez was convicted of possession of an open container in a motor vehicle, aggravated DWI (third offense), concealing identity, careless driving, assault, injuring or tampering with a vehicle,

1

and driving while license suspended. Defendant appealed all convictions to the district court—except for the driving while license suspended charge—arguing that there was a lack of substantial evidence. The district court affirmed. On appeal to this Court, Defendant again argues that the judgment below was not supported by substantial evidence.

{2}     Defendant also raises a new issue on appeal. Emphasizing that the open container offense described in NMSA 1978, § 66-8-138(B) (2001) provides that "[n]o person shall knowingly have in his possession *on his person*" (emphasis added), Defendant asserts the trial court did not submit a correct instruction to the jury and then failed to provide a curative instruction to the jury when it expressed confusion as to the possession element of the open container charge. Defendant argues that the improper instruction and the failure to provide a curative instruction created juror confusion as to the possession element of the offense and together constitute fundamental error.

{3}     We agree with the essence of Defendant's position with respect to the open container issue. Accordingly, we reverse Defendant's conviction for possession of an open container and grant a new trial on this issue. Defendant's convictions for aggravated DWI, concealing identity, careless driving, assault, and injuring or tampering with a vehicle are supported by substantial evidence and we affirm as to these remaining convictions.

**BACKGROUND**

{4}     The testimonial accounts of the facts relating to Defendant's arrest diverge significantly. At trial, APD Officer Ryan Nelson testified that he witnessed Defendant drive his pickup truck at a high rate of speed and squeal into a parking area. He stated that Defendant drove his vehicle so near to him and at such a high rate of speed that he had to move in order to avoid being struck. Upon approaching Defendant's vehicle, Officer Nelson observed that Defendant's passengers all had open containers of beer they were drinking. He testified that Defendant showed signs of intoxication, that there were open bottles of beer in the truck, and that Defendant admitted that he drank. Officer Nelson allowed the passengers to leave the scene, and then proceeded to administer field sobriety tests to Defendant, including the walk and turn and one-leg stand tests. According to Officer Nelson's testimony, Defendant performed each of these tests improperly by stepping off the imaginary line for the walk and turn test, and failing to count properly or adequately hold his balance for either test. Defendant was placed under arrest for driving while intoxicated.

{5}     Officer Nelson testified he asked Defendant for his insurance and driver's license but that Defendant denied having either. Officer Nelson also stated that when asked, Defendant said his name was Armando Lopez and gave a birth year of 1974, but did not give a month or day. While inventorying Defendant's property, Officer Nelson discovered credit cards in Defendant's wallet with Defendant's true name, Saul Nevarez. Officer Nelson requested that his assisting officer, Officer Anthony Simballa, search the computer system for information on that name. At that point Defendant became agitated, laid down in the backseat of the patrol car, and began kicking the window, eventually kicking out the small vent window and breaking the window control box. Officers Nelson and Simballa attempted to remove Defendant from the patrol car but Defendant continued to kick at them, and they were able to successfully remove him only after a one-second burst of mace to the eyes and

2

nose. Both officers testified that Defendant kicked at them and that they were grazed and nearly kicked several times.

{6}     At the police substation, Officer Nelson observed Defendant for approximately forty minutes and informed him that he was required to submit to a blood test, breath test, or both to determine his alcohol level.  Officer Nelson read this requirement from the Implied Consent Advisory notice posted at the substation.  Defendant's primary language is Spanish, and although Officer Nelson read it in English, the notice was posted in both English and Spanish and Officer Nelson testified that Defendant seemed to understand.  Defendant was advised that in addition to the required test he could have an independent test performed by a qualified person of his choice at no charge to him, and that failure to submit to the test could result in revocation of his driving privileges.  Defendant was twice asked to submit to testing and twice responded "fuck you pussy, viva la raza[!]"  The testimony of Officer Simballa generally corroborated that of Officer Nelson.

{7}     Defendant's version of these events is dramatically different.  At trial, Defendant testified that he and some friends were taking a break from helping a friend move when they were approached by Officer Nelson.  Defendant testified that he and his friends were gathered at the back of his sister's pickup truck, and that his friends were drinking beer but that he was not.  Defendant testified that he explained to Officer Nelson that he had not had a drink in eight years.  He also testified that he never gave an incorrect name to Officer Nelson, that Armando Lopez was in fact one of Defendant's passengers, and that Officer Nelson must have confused the two men's names.  Defendant also explained that his limited English proficiency may have contributed to Officer Nelson's confusion.

{8}     Defendant alleged that at some point, apparently for no reason, Officer Nelson kicked him, threw him in the police car, took him to an unknown location where he and another officer continued to beat him, called him a "fucking wetback" and threatened to "take him back to the mesa to kill him."  He testified that he never lied about his name and that despite having been beaten in and out of consciousness, he remembered at some point "blowing into a machine" and giving two breath samples which showed that he had no alcohol in his system.

**DISCUSSION**

{9}     As a preliminary matter, we note the wide divergence in the testimony describing the events surrounding Defendant's arrest.  Notwithstanding, this Court will not re-weigh the credibility of the witnesses at trial or substitute its determination of the facts for that of the jury as long as there is sufficient evidence to support the verdict.  *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.  Our review is limited to those questions properly before us, including:  (1) whether the possession element of Section 66-8-138(B) was properly described in the jury instructions; (2) whether, because of jury misunderstanding as to the requisite possession standard, Defendant's conviction constitutes fundamental error; and (3) whether substantial evidence supports Defendant's convictions.

**1.     The Meaning of "Possession" Under Section 66-8-138(B)**

**{10}** Statutory interpretation presents a question of law, which we review de novo. *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. "[A] statute defining criminal conduct must be strictly construed." *Santillanes v. State*, 115 N.M. 215, 221, 849 P.2d 358, 364 (1993). "Doubts about the construction of criminal statutes are resolved in favor of . . . lenity." *State v. Keith*, 102 N.M. 462, 465, 697 P.2d 145, 148 (Ct. App. 1985).

**{11}** Section 66-8-138(B) states:

> No person shall knowingly have *in his possession on his person*, while in a motor vehicle upon any public highway within this state, any bottle, can or other receptacle containing any alcoholic beverage that has been opened or had its seal broken or the contents of which have been partially removed.

(Emphasis added.) The open container jury instruction given at trial provided:

> For you to find [D]efendant guilty of Possession of an Open Container of Alcohol, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.  [D]efendant drove a motor vehicle on a street;
>
> 2.  [D]efendant had *in his immediate possession* an open bottle, can, glass or other container of alcoholic beverage with alcohol remaining in it; and
>
> 3.  This happened in Bernalillo County, State of New Mexico on or about the 26th day of May, 2006.

(Emphasis added.) After retiring to deliberate, the jury sent the following question to the court: "Does immediate possession mean (1) in vehicle, or (2) or [sic] in driver's possession?" Without objection from the parties, the court's response to the jury was only that the jury should apply the facts to the instruction it had already been given. Defendant argues that the jury was confused, as evidenced by its inquiry, as to whether a type of constructive possession was sufficient to find him guilty under the instruction given. He asserts his conviction cannot stand because the open container statute contains a more strict possession requirement than merely "in the vehicle," or any other theory of constructive possession.

4

**{12}** The State argues that a jury instruction requiring proof that Defendant possessed an open container "on his person" was not required because Section 66-8-138(B) may be violated by constructive possession when an open container is merely located "in the vehicle." "[C]onstructive possession is a legal fiction used to expand possession and include those cases where the inference that there has been possession at one time is exceedingly strong." *State v. Barber*, 2004-NMSC-019, ¶ 22, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). Constructive possession may be shown when a defendant merely has knowledge of and control over an open container. *See State v. Chandler*, 119 N.M. 727, 730, 895 P.2d 249, 252 (Ct. App. 1995).

**{13}** Absent a requirement for a more strict form of possession, constructive possession of illegal contraband is generally sufficient to sustain a conviction. *See State v. Brietag*, 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct. App. 1989) (stating that in drug cases "[p]roof may be of actual or constructive possession"). For example, in *Chandler*, at issue was whether the defendant was in possession of drugs under NMSA 1978, Section 30-31-22(A) (2006), which makes it unlawful for any "person to intentionally . . . possess with intent to distribute a controlled substance." *Chandler*, 119 N.M. at 730, 895 P.2d at 252. In *Chandler,* officers conducted a raid on the defendant's apartment where she was found "sitting in the midst of a large cache of drugs and drug paraphernalia," and her "belongings were found in direct association with the drugs and drug paraphernalia." *Id.* This court affirmed the defendant's conviction, concluding that the evidence supported a finding of constructive possession in satisfaction of Section 30-31-22(A) because the evidence established knowledge of and control over the drugs. *Chandler*, 119 N.M. at 730-32, 895 P.2d at 252-54.

**{14}** Similarly, in *State v. Garcia*, 2005-NMSC-017, 138 N.M. 1, 116 P.3d 72, the New Mexico Supreme Court affirmed a conviction for possession of a firearm by a felon. The statutory section at issue there stated only that "[i]t is unlawful for a felon to . . . possess any firearm . . . in this state." NMSA 1978, § 30-7-16(A) (2001). The facts establishing possession were that the gun was located under the defendant's seat next to an open container of beer that the defendant admitted was his, and that the defendant was exercising exclusive control over the gun's clip by sitting on it. *Garcia*, 2005-NMSC-017, ¶¶ 15-16. The Court held that this evidence was sufficient to establish knowledge of and control over the gun, and affirmed the defendant's conviction based on constructive possession. *Id.* ¶¶ 22-24, 35.

**{15}** In contrast, Section 66-8-138(B) contains language describing the possession element of this offense that is more restrictive than the statutes at issue in *Chandler* and *Garcia*. The statutes in *Chandler* and *Garcia* required only "possession." Section 66-8-138(B) requires "possession on his person."

**{16}** Defendant likens "possession on his person" to "actual possession" which connotes physical control or occupancy. "Actual possession" means "[p]hysical occupancy or control over property." *Black's Law Dictionary* 1201 (8th ed. 2004). Defendant reminds us of our observation in *State v. Patterson*, 2006-NMCA-037, ¶ 28, 139 N.M. 322, 131 P.3d 1286, that

a defendant's mere presence in a vehicle where there are open containers does not create individualized suspicion that a particular defendant has an open container "in his possession on his person." *Id.* (internal quotation marks and citation omitted). Defendant also cites out-of-state authority requiring physical control of property in order to qualify as actual possession. *State v. Jarrett*, 845 A.2d 476, 481 n.2 (Conn. App. Ct. 2004) (noting that an individual has actual possession of a controlled substance if, for example, it is found "on his person or in his hands"); *State v. Hensley*, 661 S.E.2d 18, 21 (N.C. Ct. App. 2008) (holding that actual possession "requires that a party have physical or personal custody of the item" (internal quotation marks and citation omitted)).

**{17}** Most pertinently, Defendant relies on *People v. Squadere*, 151 Cal. Rptr. 616 (Cal. App. Dep't Super. Ct. 1978). In *Squadere*, the court considered a California open container statute containing language mirroring that of Section 66-8-138(B). In that case, the defendant was a passenger in a vehicle with four others and was cited for possession of an open container after a search of the vehicle revealed five partially empty, cold beer bottles underneath the passenger and driver seats. *Squadere*, 151 Cal. Rptr. at 617. The court concluded that, based on the "on his person" language, the open container statute could not be violated based on constructive possession, and that the defendant could not be convicted unless the evidence established that the open container was somehow connected to his person beyond mere opportunity to access the open container. *Id.* The court reasoned that such an interpretation was proper in order to give meaning to all of the language of the statute, and give effect to the obvious distinction in the possession requirement. *Id.* at 618. We agree with the California court's analysis of the open container statute in *Squadere*. *See State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 14, 127 N.M. 272, 980 P.2d 55 (stating that "the Court may view cases from other jurisdictions interpreting practically identical statutory language as persuasive authority").

**{18}** The State argues that the language of Section 66-8-138(B) should be read broadly because it evinces an intent by the Legislature to expand, not narrow, what constitutes possession for purposes of this Section. The State's reading is improper because it disregards any possible legislative purpose in including the language "on his person" as part of the offense. *See In re Adjustments to Franchise Fees*, 2000-NMSC-035, ¶ 14, 129 N.M. 787, 14 P.3d 525 (stating that statutes must be interpreted so that no part is rendered "surplusage or superfluous" (internal quotation marks and citation omitted)); *State v. Maes*, 2007-NMCA-089, ¶ 20, 142 N.M. 276, 164 P.3d 975 ("[B]ecause the power to define crimes is committed to the Legislature, and because penal statutes are to be strictly construed, we must exercise caution in employing the judicially created legal fiction of constructive possession to criminalize conduct that the Legislature has not clearly proscribed." (citations omitted)).

**{19}** The language of Section 66-8-138(B) is in marked contrast, not only with the drug offense analyzed in *Chandler*, but also with the offenses punishable under the other sections of the open container statute. For example, Section 66-8-138(C) prohibits, with some exceptions, registered owners from "knowingly keep[ing] or allow[ing] to be kept in a motor

vehicle . . . any [open container]." This Section contains no requirement that the open container be on the registered owner's person, and prohibits conduct more consistent with the jury's inquiry as to whether possession meant merely in the vehicle. Thus, when read in context, Section 66-8-138(B) prohibits a more narrow form of possession for purposes of this particular offense. *See Quantum Corp. v. State Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (stating that statutes must be "read in connection with other statutes concerning the same subject matter").

**{20}** Giving effect to the plain meaning of the Legislature's words, we disagree with the State that Section 66-8-138(B) is violated by mere constructive possession of an open container. Defendant could not have been properly convicted based on a finding that an open container was merely in the vehicle, even if the evidence was otherwise sufficient to establish knowledge of and control over the open container.

**{21}** However, this holding should not be construed under Section 68-8-138(B) to mean that, as a matter of law, a defendant may be convicted only when observed with an open container in hand or perhaps within an article of clothing. Such a narrow reading would also be improper and could lead to absurd results inconsistent with legislative intent and stare decisis on this issue. We recognize, as did the court in *Squadere*, that "[t]here may be a variety of circumstances, impossible to foresee, where circumstantial evidence might support a conviction[,]" 151 Cal. Rptr. at 617 n.2, even where a defendant was not observed in actual physical possession of the open container. For example, in *State v. Garcia*, facts that an open beer bottle was discovered under the defendant's seat and that the defendant admitted he had been drinking from the bottle, were sufficient to sustain a conviction for possession of an open container. 2004-NMCA-066, ¶ 34, 135 N.M. 595, 92 P.3d 41, *aff'd in relevant part, rev'd on other grounds,* 2005-NMSC-017, ¶ 34.

**{22}** Therefore, we hold that Section 66-8-138(B) requires more than facts merely showing that an open container was located within a defendant's vehicle, but does not go so far as requiring that a defendant must be observed in actual physical possession of an open container. As in *Garcia*, it is possible that the element of "possession on his person" can be established by circumstantial evidence. Jury instructions implementing this section must either follow the express language of the statute, or be crafted to better capture this standard than does the language "immediate possession."

**2.      The Jury's Uncured Confusion Resulted in Fundamental Error**

**{23}** Having determined that Section 66-8-138(B) is not violated where the open container was merely in Defendant's vehicle or other circumstances supporting only a finding of constructive possession, we exercise our discretion to examine whether Defendant should be granted a new trial on this issue. *See* Rule 12-216(B) NMRA (stating that despite a lack of preservation, the reviewing court can consider "jurisdictional questions or, in its discretion, questions involving:  (1) general public interest; or (2) fundamental error or fundamental rights of a party"). Given that this issue is not jurisdictional and was not

preserved, we will uphold Defendant's conviction for possession of an open container unless the trial court's errors in first submitting an incorrect instruction and then declining to provide a curative instruction "implicated a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Barber*, 2004-NMSC-019, ¶ 18 (internal quotation marks and citation omitted). "[I]f fundamental error exists, a new trial will be ordered." *State v. Mascareñas*, 2000-NMSC-017, ¶ 7, 129 N.M. 230, 4 P.3d 1221 (internal quotation marks and citation omitted).

**{24}** "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Barber*, 2004-NMSC-019, ¶ 8. New Mexico courts recognize fundamental error as a basis to protect a defendant's substantive rights in two instances. *Id.* ¶¶ 15-17. The first is in cases where a defendant has been convicted of a crime despite indisputable innocence. *See id.* (explaining that fundamental error was applied to protect a defendant's rights after he was convicted of a murder that occurred while the defendant was undisputedly unconscious). However, "not all questions of fundamental error turn solely on guilt or innocence" of the defendant, *id.* ¶ 14, and in some circumstances our focus is directed "more on process and the underlying integrity of our judicial system." *Id.* ¶ 16. Thus, the second basis for establishing fundamental error occurs when "a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* ¶ 17.

**{25}** Analysis of fundamental error in this latter context generally requires, as a first step, a determination as to whether a reasonable juror would have been confused or misdirected by the jury instruction. *Id.* ¶ 19. In addressing this question we need look no further than the fact that the jury expressed its confusion as to the possession standard to the trial court judge, and that its confusion went uncured. We next "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Id.* (internal quotation marks and citation omitted).

**{26}** There is no miscarriage of justice where, despite any misunderstanding by the jury, the circumstances of the case demonstrate that all the necessary elements of the offense were satisfied beyond a reasonable doubt. In *Barber*, the defendant was charged with possession of methamphetamine with intent to distribute. *Id.* ¶ 7. The defendant denied possessing the illegal drugs and argued on appeal that the jury equated possession with mere proximity, which is insufficient, and that although it was never requested at trial, it was fundamental error to not instruct the jury on the definition of possession. *Id.* ¶¶ 11-12. The Court agreed that failure to provide the jury with an instruction defining possession would have constituted reversible error had it been preserved, but concluded that it did not rise to fundamental error. *Id.* ¶¶ 12, 32. The Court reasoned that, given the jury's unchallenged findings that the element of the offense for intent to distribute was met, if the jury misunderstood the meaning of possession it was likely because the jury equated possession with ownership rather than mere proximity. *Id.* ¶ 26. Based on this reasoning, the Court stated that such a misunderstanding "actually would have placed a greater burden on the

prosecution, because ownership would be more difficult to prove than possession alone." *Id.* Thus, the Court held that there was no fundamental error because the missing instruction did not create confusion in the jury that would "undermine the reliability of the verdict and the integrity of our judicial system." *Id.* ¶ 32.

**{27}** However, a miscarriage of justice does occur where, based on an uncured misunderstanding by the jury, there is a distinct possibility that a defendant was convicted based on an incorrect legal standard. In *Mascareñas*, for example, the defendant was convicted of negligent child abuse for inflicting shaken baby syndrome on his infant son which resulted in the child's death. 2000-NMSC-017, ¶¶ 2, 6. How severely the child was shaken was disputed at trial, and in his defense the defendant argued that while his conduct may have been careless, it did not rise to the level of reckless disregard for the child's safety as required for a finding of criminal negligence. *Id.* ¶ 15. Although there was no objection at trial, on appeal the defendant argued that the jury instruction for negligent child abuse failed to adequately define the requisite culpable mental state for criminal negligence by including language that confused criminal negligence with civil negligence. *Id.* ¶¶ 7-8. Under the circumstances of that case, the Court reasoned that there was a distinct possibility that the defendant was convicted based on the improper standard of carelessness. *Id.* ¶ 15. The Court held that it could not "state with confidence that the jury concluded that [the defendant's] actions in shaking his baby satisfied the proper criminal negligence standard." *Id.*

**{28}** Another line of authority recognizes a general rule that the failure to give a jury instruction containing an essential element of the crime charged constitutes fundamental error requiring reversal. *State v. Osborne*, 111 N.M. 654, 661-62, 808 P.2d 624, 631-32 (1991) (holding that defendant could not waive claim of error based on a failure to instruct on an essential element of the crime). We have already determined that the jury instruction given below did not accurately capture or describe the crime defined by Section 66-8-138(B). We need not decide whether "on his person" is an element of the crime such that the failure to include that verbiage in an instruction would be per se reversible error because we also know that in this case the jury expressed confusion over the type of "possession" required to commit the crime. That confusion was not dispelled because the trial court did not offer any curative instruction or explanation in response to the jury's inquiry.

**{29}** At trial, both Defendant and Officer Nelson agreed that there were other men in the truck with Defendant all of whom were drinking. Defendant argued that he was not in possession of an open container, and there was evidence that Officer Nelson did not recall exactly how many open containers he observed, or exactly where they were. Even if the jury believed the contested fact that Defendant admitted to drinking, unlike *Garcia*, there was no evidence to link any particular open container in the vehicle specifically to Defendant's possession such that it might have been considered on his person.

**{30}** In light of these circumstances, we cannot conclude with confidence that Defendant's guilt was proven beyond a reasonable doubt pursuant to the requisite legal standard for

9

possession under Section 66-8-138(B). There is a distinct possibility that Defendant's conviction was based on the mere finding that the open container was in the vehicle, as opposed to the proper standard requiring possession on Defendant's person. Accordingly, we conclude that the jury's uncured misunderstanding resulted in fundamental error and we remand to the district court for a retrial of this issue.

3. **Substantial Evidence Supports Defendant's Convictions for Aggravated DWI, Careless Driving, Concealing Identity, Assault, and Injuring or Tampering with a Vehicle**

**{31}** Defendant's remaining arguments are evidentiary, and in reviewing them we apply a two-step process. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). Initially, the evidence is viewed in the light most favorable to the verdict. *Id.* The appellate court must then make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{32}** "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). "Only the jury may resolve factual discrepancies arising from conflicting evidence." *Apodaca*, 118 N.M. at 766, 887 P.2d at 760 (citation omitted). "The reviewing court does not weigh the evidence or substitute its judgment for that of the [jury] as long as there is sufficient evidence to support the verdict." *Mora*, 1997-NMSC-060, ¶ 27.

**{33}** Defendant challenges his DWI conviction based on the issue of impairment. For Defendant to have been found impaired, the evidence must have justified a finding that Defendant was "less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to [the defendant] and the public." *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446 (internal quotation marks and citation omitted). Evidence that may tend to cast doubt on the actual level of impairment does not establish that the overall body of evidence was insufficient to prove impairment beyond a reasonable doubt. *See id.* ¶ 14.

**{34}** The evidence at trial was that Defendant drove his vehicle at a high rate of speed and turned into a parking lot with tire's squealing, and that Officer Nelson had to move to avoid being hit by the vehicle. Officer Nelson also testified that Defendant had bloodshot, watery eyes, and that he detected an odor of alcohol from Defendant. According to Officer Nelson, Defendant also admitted to having consumed beer and failed to adequately perform field sobriety tests by losing his balance and failing to follow instructions. In addition to the inferences that can be drawn from poor balance and concentration, Officer Nelson testified that the results of the field sobriety tests indicated impairment because they demonstrated

10

that Defendant was unable to focus on more than one thing, which is essential to the task of driving.

{35}    Defendant argues that, while Officer Nelson's testimony may have shown that Defendant had been drinking, the totality of the evidence was insufficient to find impairment beyond a reasonable doubt.  Defendant argues that, in addition to evidence indicating impairment, other evidence at trial suggested that he was not impaired.  For example, there was no testimony that Defendant had trouble parking or exiting his vehicle, he did not hold on to anything for balance, and he cooperated in performing the field sobriety tests. Although Defendant raises facts which, taken by themselves, may tend to prove non-impairment, such contrary evidence does not provide a basis for reversal.  *See id.*

{36}    Despite any contrary evidence proffered by Defendant, the evidence was sufficient to demonstrate that Defendant had consumed alcohol and that as a result his motor skills, balance, and judgment were impaired.  *See State v. Neal*, 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330 (filed 2007) (affirming a DWI conviction based on evidence that the defendant veered over the shoulder line three times, smelled of alcohol, had bloodshot watery eyes, admitted drinking, and failed to adequately perform field sobriety tests). Viewed in a light most favorable to the verdict, this evidence justifies the jury's finding of impairment to the slightest degree.

{37}    With respect to the remaining convictions for careless driving, concealing identity, assault, and injuring or tampering with a vehicle, Defendant merely reiterates his trial testimony arguing that, in light of the disputed facts, his guilt could not be established beyond a reasonable doubt.  Besides pointing out that the facts were disputed, Defendant raises no substantive challenge to the evidence in support of the jury's findings which included:  that Defendant drove erratically and nearly hit Officer Nelson, that Defendant gave the false name of Armando Lopez, that Defendant became irate and kicked at officers, and that Defendant kicked out a window in the patrol car and damaged its door.  Defendant acknowledges that this Court cannot judge the credibility of the witnesses who testified at trial or substitute its judgment for that of the fact finder where substantial evidence supports the outcome.  *Mora*, 1997-NMSC-060, ¶ 27.  We conclude that the evidence was sufficient to establish guilt beyond a reasonable doubt for careless driving, concealing identity, assault, and injuring or tampering with a vehicle.

**CONCLUSION**

{38}    For the foregoing reasons, we affirm Defendant's convictions for aggravated DWI (third offense), concealing identity, careless driving, assault, and injuring or tampering with a vehicle.  We reverse Defendant's conviction for possession of an open container and remand to the district court for a retrial of this remaining charge.

{39}    **IT IS SO ORDERED.**

11

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Nevarez*, Docket No. 28,599**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-FE | Fundamental Error |
| AE-SR | Standard of Review |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **JI** | **JURY INSTRUCTIONS** |
| JI-CJ | Criminal Jury Instructions |
| JI-IJ | Improper Jury Instructions |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |