This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**

Plaintiff-Appellee,

v. **No. 32,689**

**FELIPE AVALOS**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Kevin R. Sweazea, District Judge**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}    Defendant appeals his convictions for battery on a household member and aggravated battery with a deadly weapon. He raises five arguments on appeal. We affirm. Because this is a memorandum opinion and because the parties are familiar with the case, we reserve discussion of the facts for our analysis of the issues on appeal.

**DISCUSSION**

**1.    Voluntary intoxication instruction**

{2}    Defendant argues that the district court should have given a jury instruction to the effect that his voluntary intoxication may have negated the specific intent required for the crime of aggravated battery. He concedes that he did not request such an instruction. Consequently he argues that (1) it was fundamental error not to instruct the jury on voluntary intoxication or, alternatively, (2) his attorney's failure to request the instruction constituted ineffective assistance of counsel.

**a.    Fundamental error**

{3}    "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Nevarez*, 2010-NMCA-049, ¶ 24, 148 N.M. 820, 242 P.3d 387 (internal quotation marks and citation omitted). Our courts recognize fundamental error in two types of cases: (1) where a defendant is convicted despite indisputable innocence and (2) where "a mistake in the

process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* (internal quotation marks and citation omitted). Defendant appears to maintain that this is the second type of case.

**{4}** Defendant contends that the district court should have given the jury UJI 14-5111 NMRA, which, if modified to fit the circumstances, would read as follows:

> Evidence has been presented that the defendant was [intoxicated from the use of alcohol]. You must determine whether or not the defendant was [intoxicated from the use of alcohol] and, if so, what effect this had on the defendant's ability to form the intent to [injure the victim Joshua Gomez].

> The burden is on the [S]tate to prove beyond a reasonable doubt that the defendant was capable of forming an intention to [injure the victim]. If you have a reasonable doubt as to whether the defendant was capable of forming such an intention, you must find the defendant not guilty of [aggravated battery with a deadly weapon].

**{5}** We conclude that the district court's failure to give this instruction did not constitute fundamental error because the evidence did not support the instruction. Our case law establishes that "[a] finding of voluntary intoxication provides a defense to specific intent crimes where the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Garcia*, 2011-NMSC-003, ¶ 35, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). Thus, "[i]n order to receive a voluntary intoxication instruction, there must be evidence supporting the conclusion that the defendant was actually intoxicated." *Id.*

3

**{6}** Here, the only testimony about Defendant's alleged intoxication came from Marshal Larry Cearley. Defense counsel asked Marshal Cearley, "[Defendant] was intoxicated, correct?" and Marshal Cearley replied, "Correct." Marshal Cearley further testified that Defendant told him that he remembered stabbing Mr. Gomez but could not remember where on his body he stabbed him and that he did not remember hitting Monica. This evidence was insufficient to warrant an instruction on voluntary intoxication because it did not "reasonably tend[] to show that [D]efendant's claimed intoxication rendered him incapable of acting in a purposeful way." *State v. Luna*, 1980-NMSC-009, ¶ 26, 93 N.M. 773, 606 P.2d 183, *abrogated on other grounds by Horton v. California,* 496 U.S. 128 (1990); *see also State v. Hernandez,* 2003-NMCA-131, ¶ 21, 134 N.M. 510, 79 P.3d 1118 (concluding that evidence was insufficient to support instruction on voluntary intoxication where "[the d]efendant presented no evidence . . . that he was intoxicated to any degree, let alone to the point that it affected his ability to form the necessary mental state for a specific-intent crime"). Marshal Cearley did not indicate why he said that Defendant was intoxicated—i.e., whether his statement was based on his own observations of Defendant or on Defendant's statements to him. In any event, Marshal Cearley's minimal statement, plus Defendant's statement that he could not remember exactly where he had stabbed Mr. Gomez, did not provide any meaningful information upon which a jury could

4

determine whether Defendant's ability to form an intent to injure was affected. As we observed in *State v. Romero*, "Typically, evidence of intoxication will come from witnesses who observed the defendant's behavior and demeanor at or near the time of the crime." 1998-NMCA-057, ¶ 26, 125 N.M. 161, 958 P.2d 119.

{7} Moreover, because the evidence as a whole supported the inference that Defendant was in fact capable of forming the specific intent to injure Mr. Gomez, we cannot say that the district court's failure to give UJI 14-5111 misled or confused the jury. *See Nevarez*, 2010-NMCA-049, ¶ 25 (explaining that in determining whether an alleged error in jury instructions constituted fundamental error, appellate court considers "whether a reasonable juror would have been confused or misdirected by the jury instruction"). Monica Avalos testified that when Defendant was hitting her, he told her that when Mr. Gomez arrived, Defendant was going to stab him.

{8} In sum, without evidence that Defendant's alleged intoxication somehow impacted his ability to form the specific intent to injure Mr. Gomez, we cannot say that the district court's failure to give UJI 14-5111 constituted fundamental error.

**b.  Ineffective assistance**

{9} Defendant next contends that if the failure to give UJI 14-5111 does not constitute fundamental error, his attorney's failure to request the instruction amounted to ineffective assistance of counsel. We review this question de novo. *Garcia*, 2011-

NMSC-003, ¶ 33. In order to establish ineffective assistance, Defendant must show that "(1) counsel's performance was deficient, and (2) such deficiency resulted in prejudice against [him]." *Id.*

{10} We conclude that counsel's performance was not deficient. First, we have already determined that there was insufficient evidence to support the giving of UJI 14-5111, and counsel was surely aware of this. Thus, failure to request a voluntary intoxication instruction demonstrated a practical recognition of the state of the evidence. *See State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (explaining that a defendant must overcome the presumption that counsel's conduct might be considered sound trial strategy). Second, while Defendant suggests that effective counsel would have introduced more evidence or developed further arguments related to Defendant's intoxication and its impact on his mental state, the record does not reveal whether such evidence actually existed. Therefore, Defendant's argument would more properly be the subject of a habeas corpus proceeding. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition.").

**2.     Potential bias of jurors**

**{11}** Defendant argues that the district court erred in failing to inquire further when two jurors told the bailiff about circumstances that were suggestive of potential bias. "[W]e review the trial court's rulings regarding the selection of jurors for an abuse of discretion[.]" *State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523 (first alteration in original) (internal quotation marks and citation omitted). The party raising the jury selection issue "bears the burden of proving juror bias." *Id.*

**{12}** After the prosecutor's opening statement, the district court recessed for the lunch break. After lunch, before bringing in the jury, the court advised counsel that two jurors had approached the bailiff with concerns.

**{13}** Juror Nora M. told the bailiff that she had been Defendant's mother-in-law. The district court's notes indicated that she raised her hand during voir dire when the court asked whether any potential jurors knew Defendant, but that she did not raise her hand when the court asked whether anyone who knew Defendant would have a problem serving. The court's notes further indicated that counsel did not ask Nora M. any other questions. When the district court asked counsel if there were any concerns about Nora M. sitting as a juror, the prosecutor said he would like the district court to inquire further, while defense counsel said that he had talked to Defendant at the time and that Defendant felt that Nora M. would "be okay." The district court noted that

any concerns about Nora M.'s acquaintance with Defendant could have been explored and were not; therefore, she would remain as a juror.

{14} Juror Nadine M. also approached the bailiff and told him that she had previous experience with domestic violence and that she was kind of "shooken [sic] up" after the prosecutor's opening statement. The district court noted that it had informed the jurors during voir dire as to the charges against Defendant and that the prosecutor covered this information as well. Therefore, the district court stated, unless Nadine M. were to reach the point where she was unable to serve, she too would remain as a juror. Defense counsel agreed. The district court concluded that Nadine M. would remain as a juror unless she were to express some difficulty to the court.

{15} While it may have been preferable for the district court to question Nora M. and Nadine M. to determine conclusively that they could properly sit as jurors, we nonetheless conclude that the court did not abuse its discretion in failing to conduct such an inquiry. Our Supreme Court's decision in *State v. Sanchez*, 1995-NMSC-053, 120 N.M. 247, 901 P.2d 178, supports our conclusion.

{16} In *Sanchez*, after the jury began its deliberations, defense counsel learned that the sister of one of the jurors was employed by the district attorney's office as a victim advocate and that the sister had sat with the victims' family during the trial. *Id.* ¶ 8. The defendants then moved to have the juror replaced with an alternate or for a

8

mistrial, and the district court denied the motions. *Id.* The Supreme Court affirmed on the ground that the defendants had waived their objection to the juror's participation. *Id.* ¶ 11. The juror's questionnaire stated that her sister was employed by the district attorney's office, and the juror stated during voir dire that she knew one of the prosecutors because her sister worked in his office. *Id.* ¶ 3. Defense counsel's failure to inquire further after these revelations constituted waiver. *Id.* ¶ 11. While the Court acknowledged that juror bias may sometimes be implied in "extreme situations," *id.* ¶ 13 (internal quotation marks and citation omitted), it concluded that the facts in the case "[did] not justify that implication." *Id.* ¶ 14. "[O]ther than their assertion that the juror's relationship to her sister constituted bias, [the defendants] presented no other evidence that the juror was unable to perform her duties and that [the defendants] were prejudiced as a result." *Id.* ¶ 16.

{17}     The circumstances in the present case are similar. Juror Nora M. indicated during voir dire that she knew Defendant, but defense counsel did not follow up with further inquiry. In fact, defense counsel affirmatively told the district court that Defendant had no concern about Nora M. serving as a juror. This clearly amounted to waiver of any objection Defendant may have had with Nora M.'s service. "A defendant cannot be permitted to escape the consequences of his earlier knowledge [of possible juror bias] or to reverse his previous position simply because he gambled

and lost." *Id.* ¶ 12 (alteration in original) (internal quotation marks and citation omitted).

{18} With respect to juror Nadine M., defense counsel agreed with the district court's statement that she should serve as a juror unless she reached the point where she felt unable to serve. Defense counsel went on to state that his only concern was that Nadine M. did not say she had an issue during voir dire. While we agree that the best practice would be for the district court to follow up with an inquiry of the individual juror under such circumstances, it was not an abuse of discretion to decline to conduct an inquiry. Nadine M. did not tell the bailiff that she was biased or that she felt unable to be fair, and there is no authority requiring excusal or replacement of a juror under these circumstances. *See State v. Baca*, 1990-NMCA-123, ¶¶ 8, 21, 111 N.M. 270, 804 P.2d 1089 (stating that "there is no New Mexico authority to the effect that a juror [who had been the victim of a crime similar to the one charged] must be excused, in spite of her initial expression of bias and experience with crime"). Moreover, we assume that Nadine M. obeyed the district court's instruction that sympathy and prejudice should not influence her deliberations or the verdict. *See State v. Gardner*, 2003-NMCA-107, ¶ 12, 134 N.M. 294, 76 P.3d 47 (stating that in order to conclude that a prospective juror's purportedly biased comment tainted the jurors who served, the appellate court would have to speculate that the jurors disregarded the court's

instructions, despite the presumption that the jury obeys its instructions). And Defendant did not present any evidence suggesting that Nadine M. was in any way biased by her prior experience with domestic violence. *Id.* (noting that "[the] inquiry into potential jury bias focuses on [the] presence or absence of evidence demonstrating that [the juror was] unwilling or unable to decide the case based on the evidence" (internal quotation marks and citation omitted)).

**3.      Sufficiency of the evidence establishing the existence a of deadly weapon**

{19}      Defendant maintains that there was insufficient evidence that Defendant used a deadly weapon in his attack on Mr. Gomez. He claims that the evidence established that the only weapon Defendant could have wielded was a knife handle rather than an intact knife, and the jury was never instructed to determine whether a knife handle could be deemed a deadly weapon. He points to Marshal Cearley's testimony that he found the knife blade eleven feet from the location where he found the knife handle, and that the altercation between Defendant and Mr. Gomez occurred where the handle was found. Defendant further contends that because there was no photograph or description of Mr. Gomez's wound, the evidence does not support the inference that the injury was caused by the knife blade.

{20}      "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and

11

resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We consider "whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86.

{21} The district court instructed the jury that the elements of aggravated battery with a deadly weapon were:

> 1. [D]efendant touched or applied force to Joshua Gomez with a deadly weapon. [D]efendant used a kitchen knife. A kitchen knife is a deadly weapon only if you find that a kitchen knife, when used as a weapon, could cause death or great bodily harm.

> 2. [D]efendant intended to injure Joshua Gomez.

> 3. A reasonable person in the same circumstances as Joshua Gomez would have had the same belief;

> 4. This happened in Socorro County, State of New Mexico on or about the 24th day of June, 2011.

{22} Viewing the evidence in the light most favorable to the guilty verdict, we conclude that sufficient evidence supported the jury's determination that Defendant wielded a kitchen knife, and not just a knife handle, in his attack on Mr. Gomez. Monica Avalos testified that when Monique came into the house to get her, Defendant was on top of Monica hitting the top of her head with the back side of the blade of a

12

butcher's knife. When Defendant saw Monique, he got off of Monica and went outside.

{23}    Mr. Gomez testified that he was sitting in the driver's seat of his van in front of the Avalos residence with the van window open when Defendant ran toward him and lunged at him. Mr. Gomez put his arm up, and Defendant stabbed him in the arm. Mr. Gomez's daughter yelled that Mr. Gomez was bleeding. Defendant then punched Mr. Gomez and broke his glasses. Mr. Gomez got out of the van, and the two men wrestled around until Mr. Gomez pinned Defendant to the ground. After Marshal Cearley arrived, Mr. Gomez saw the blade of the knife without the handle. Mr. Gomez went to the hospital, where he received stitches.

{24}    Clarissa Gomez, the daughter of Ms. Avalos and Mr. Gomez, testified that she was with her father when they went to pick up Ms. Avalos. Defendant approached the van and stabbed her father in the arm. She saw the knife after the police officer arrived, and the blade was broken off. She saw just the knife handle outside the driver's door of the van.

{25}    Marshal Cearley testified that when he arrived at the scene of the altercation, he saw that Mr. Gomez was bleeding a considerable amount from his left arm. Marshal Cearley found a knife handle in the area where Defendant had been lying, and he found the knife blade about eleven feet from the handle. The blade was about

sixteen feet from the van. When he identified the handle and blade at trial, Marshal Cearley testified that the blade still had blood on it. He further testified that when he questioned him, Defendant said that he took the knife from the kitchen table.

{26}     This evidence and its reasonable inferences support the jury's finding that Defendant used a kitchen knife when he attacked Mr. Gomez. Defendant used an intact knife—handle and blade together—when he was attacking Ms. Avalos. Given the fact that Mr. Gomez was bleeding and required stitches, it is reasonable to infer that, Defendant stabbed Mr. Gomez with either the intact knife or the blade of the knife. It is also reasonable to infer that the knife blade and handle separated sometime during Defendant's attack on Mr. Gomez at the van window because (1) after Defendant's initial stabbing attack on Mr. Gomez, Defendant continued attacking Mr. Gomez with his fists rather than with the knife, thus suggesting that the knife became unuseable at some point; and (2) Ms. Avalos saw the blade inside the van. While Marshal Cearley ultimately found the blade some sixteen feet from the van, it is plausible that the blade was somehow moved to that location during the activity that occurred during or after the affray between Defendant and Mr. Gomez, or after Mr. Gomez and his daughter left the van. We therefore affirm Defendant's conviction for aggravated battery with a deadly weapon.

**4.     Admission of Mr. Gomez's testimony**

14

**{27}** Defendant argues that the district court should have excluded Mr. Gomez's testimony that the knife probably would have hit him in the heart if he had not put his arm up before Defendant stabbed him. He claims that this testimony was speculative or an improper lay opinion, and that, in either case, the testimony communicated an unproven level of danger and intent. At trial, the only basis on which Defendant objected to this testimony was that it was speculative. Therefore, Defendant did not preserve the other bases of error that he now argues, and we decline to consider them. *State v. Varela*, 1999-NMSC-045, ¶¶ 25-26, 128 N.M. 454, 993 P.2d 1280 (explaining that in order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling on it).

**{28}** "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. Considering only Defendant's argument that Mr. Gomez's testimony was speculative, we conclude that the district court did not abuse its discretion in allowing the testimony.

**{29}** Defendant primarily argues that Mr. Gomez's testimony about where the knife likely would have struck had he not raised his arm called for speculation beyond his personal knowledge. He claims that Mr. Gomez did not see a knife, did not know

15

whether Defendant held only a knife handle, and did not describe Defendant's conduct sufficiently to permit the jury to infer the angle of the blow. We disagree. Mr. Gomez obviously saw the direction Defendant's arm or hand was traveling because he raised his own arm to ward off the blow, and his arm was cut in the process. Thus, he could deduce where Defendant's blow likely would have landed if his own arm had not interrupted it. As the State observes in its brief, "[t]he general location of the heart within the body is a matter of common human awareness." We conclude that the district court did not abuse its discretion in allowing this testimony.

## 5. Failure to inquire regarding potential conflict of defense counsel

{30} Defendant argues that a potential conflict existed between himself and his attorney and that the district court should have made further inquiries about this alleged conflict. He claims that the court's failure to inquire violated his constitutional right to conflict-free counsel. Notably, he does not argue that his counsel was ineffective due to incompetence. Instead, he maintains that counsel had a conflict of interest. *See State v. Martinez*, 2001-NMCA-059, ¶¶ 23-24, 130 N.M. 744, 31 P.3d 1018 (distinguishing between a defendant's right to counsel of reasonable competence and the right to counsel's undivided loyalty). We therefore limit our discussion to the alleged conflict of interest.

**{31}** "When the record demonstrates that an actual conflict rendered counsel's assistance ineffective, prejudice is presumed, and the claim can be addressed for the first time on appeal." *State v. Vincent*, 2005-NMCA-064, ¶ 4, 137 N.M. 462, 112 P.3d 1119. "We review de novo whether there is a conflict of interest and whether Defendant is entitled to a presumption of prejudice." *Id.*

**{32}** In the present case, the record does not demonstrate that an actual conflict existed. The record shows only that Defendant complained to the district court at two pretrial hearings that he was dissatisfied with defense counsel's representation. On one occasion, he said that counsel had not discussed the defense with him, and on another occasion, he said that he and defense counsel had "a few disagreements." These vague objections do not support the view that there was "an actual, active conflict that adversely affect[ed] counsel's trial performance[.]" *Martinez*, 2001-NMCA-059, ¶ 24. "[T]he mere possibility of a conflict is insufficient." *Id.*

**CONCLUSION**

**{33}** For the foregoing reasons, we affirm Defendant's convictions.

**{34}** **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

17

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**