Certiorari Denied, October 27, 2016, S-1-SC-36109

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-102**

**Filing Date: September 8, 2016**

**Docket No. 33,807**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**KEVIN PITNER,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Karl Erich Martell, Assistant Public Defender
Santa Fe, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant appeals his conviction for criminal sexual contact of a minor (CSCM), in violation of NMSA 1978, Section 30-9-13(A) (2003). On appeal, Defendant argues that: (1) the State failed to present sufficient evidence to sustain the verdict; (2) the jury was improperly instructed; and (3) Defendant received ineffective assistance of counsel at trial.

We affirm Defendant's conviction.

## I. BACKGROUND

**{2}** A jury found Defendant guilty of one count of second degree CSCM after Victim, the nine-year-old cousin of Defendant's girlfriend, accused him of unzipping her "footie"pajamas and using his fingers to rub the skin below her underwear and "a little above [her] privates." Victim testified that on the night of the incident, she was staying overnight at her aunt's house, where Defendant was also staying. She stated that she and her nine-year-old, male cousin were watching a movie in the top bunk of a bunk bed when they fell asleep. She described that she was wearing "footie" pajamas that covered her "feet[] to [her] neck."

**{3}** Victim testified that in the middle of the night, due to a bad dream, she moved from the top bunk to the lower bunk to sleep with her female cousin, Defendant's girlfriend. At the time Victim moved to the lower bunk, Defendant was not sleeping in the lower bunk with her cousin. But when Victim awoke in the morning, her "pajamas were unzipped and [Defendant's] hand was in [her] pants." Victim stated that when she went to bed, she zipped her pajamas "[a]ll the way to [her] neck" and she did not unzip them during the night; however, when she awoke, her pajamas were unzipped to "about [her] waist[]line." She stated that Defendant, who was laying on the other side of Victim's female cousin, positioned his hand "[i]n [her] underwear[,]" and when she looked at him, "he pulled his hand away . . . and he acted like he was asleep[,]" closing his eyes "right away." She described that while Defendant's hand was "[n]ot very far" into her underwear, Defendant "was . . . touching [the] skin . . . [u]nderneath [her] underwear" in a "rubbing" motion. On cross-examination, Victim clarified that Defendant's hand did not touch her "privates," but that "[i]t was above—a little above [her] privates."

**{4}** Victim testified that she then "got up and [she] went to go and tell [her] aunt." While she told her aunt that Defendant was unzipping her pajamas, she chose not to tell her aunt that Defendant put his hand in her underwear as she was embarrassed and scared. Soon thereafter, her aunt called her mother, and her mother "rushed over to the house" to pick her up. It was not until later, when she arrived at her own home that she told her mom Defendant put his hand in her underwear.

**{5}** Following the trial, the jury was provided, in relevant part, with the instruction containing the elements of CSCM and the definitions of "mons veneris," "vulva," and "vagina." The jury was not provided with an instruction defining "groin." During closing arguments, the State informed the jury that "[t]here is no legal definition for the groin area." The State posed to the jury: "[i]s there a way for a 21-year old man to have his hands in [her] underpants without touching the groin area? What do you consider the groin? . . . [D]oes the groin area extend past the underpants? If it does, we have ourselves an element[] that is met." Defendant did not object to the State's comments in closing arguments or to the absence of a definition for "groin" in the jury instructions. The jury convicted Defendant of CSCM. Defendant appeals this conviction.

2

## II.  DISCUSSION

### a.  There Was Sufficient Evidence Presented to Sustain Defendant's Conviction

**{6}**  Defendant contends that there was insufficient evidence presented at trial to sustain his conviction for CSCM. The standard of review for a sufficiency of the evidence claim requires the appellate court to evaluate whether substantial evidence exists to support the verdict. *See State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170. This standard requires that "[w]e review the evidence introduced at trial to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179 (internal quotation marks and citation omitted). "This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344. "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *Gipson*, 2009-NMCA-053, ¶ 4.

**{7}**  CSCM consists of "the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful and intentional causing of a minor to touch one's intimate parts." Section 30-9-13(A). The statute defines " 'intimate parts' " as "the primary genital area, groin, buttocks, anus or breast." *Id*. In order for the State to prove CSCM in this case, it was required to show, in relevant part, beyond a reasonable doubt that Defendant "touched or applied force to the unclothed [vagina, vulva, and/or groin area] of" Victim. UJI 14-925 NMRA. The jury here was instructed accordingly. Both parties recognize, and this Court has previously acknowledged that the CSCM statute does not provide a definition of "groin." *See State v. Benny E.*, 1990-NMCA-052, ¶ 18, 110 N.M. 237, 794 P.2d 380 (recognizing that the Legislature has not "specifically defined" the term "groin" as it pertains to CSCM).

**{8}**  Defendant contends that the State failed to prove that Defendant unlawfully touched Victim's "unclothed vagina, vulva and/or groin" as Victim was "small for her age" and her underwear were "granny panties, . . . such that the waist band of the underwear when worn was near the belly button of [a] small girl." Furthermore, Defendant argues that because Victim explicitly stated that Defendant did not touch "her privates, . . . there is no way the jury could have found that [Defendant] touched [Victim's] vagina, vulva, mons veneris[,] or groin area." We disagree.

**{9}**  Victim testified that while Defendant's hand was "[n]ot very far" underneath her underwear, it was "a little above [her] privates." It would be reasonable for a jury to assume that when Victim, a young child, was testifying regarding her "privates," she was referring to what is technically termed to be her "vulva" or her "vagina." Thus, Victim made clear that

3

Defendant did not "touch[] or appl[y] force to [her] unclothed [vagina or vulva.]" UJI 14-925. Accordingly, we must determine whether there was sufficient evidence presented at trial for a jury to conclude beyond a reasonable doubt that Defendant "touched or applied force to [Victim's] unclothed [groin area.]" *Id.* (alteration omitted).

**{10}** As we have stated, the Legislature has not promulgated a definition for the terms "groin or groin area." Therefore, we must turn to this Court's previously identified "common meaning of the word—the fold or depression marking the line between the lower part of the abdomen and the thigh, as well as the region of that line." *Benny E.*, 1990-NMCA-052, ¶ 18. The best way to clearly describe and explain the area encompassed by this "common meaning" is to imagine an individual sitting in a chair. When a person is sitting, a fold naturally appears delineating "the lower part of the abdomen and the thigh[.]" *Id.* As the common meaning encompasses the "region of that line," *id.*, if we were to place a straight-edge across the fold that is created, the line of the straight-edge would fall slightly above the mons veneris. The mons veneris is identified as "the rounded eminence or protuberance at the lowest point of the abdomen of a woman that is ordinarily covered with pubic hair on an adult." UJI 14-981 NMRA ("The upper border of the hair on the mons veneris forms a horizontal line."). Accordingly, when Victim stated that Defendant put his hand beneath her underwear and was rubbing the skin "a little above [her] privates[,]" a jury could have reasonably determined that Defendant "touched or applied force to [Victim's] unclothed [groin area.]" UJI 14-925; *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 (stating that an appellate courts does "not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict").

**{11}** Insofar as Defendant argues that Victim's underwear may have been too large, such that the waistband was near her bellybutton, and she testified that Defendant's hand was "[n]ot very far" beneath the waistband of her underwear we first note that Defendant points us to nothing in the record showing how the underwear fit Victim at the time of the assault. *See* Rule 12-213(A)(4) NMRA (stating that the appellant is responsible for providing citations to the record relevant to his or her argument). Furthermore, Victim testified that Defendant was rubbing "a little above [her] privates[,]" and "[i]t is the exclusive province of the jury to resolve factual inconsistencies in [that] testimony." *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 (internal quotation marks and citation omitted). Accordingly, we conclude there was sufficient evidence presented at trial to sustain Defendant's conviction of CSCM.

**b.      The Jury Was Not Improperly Instructed**

**{12}** Defendant alleges that the State "created an issue when [it] offered a conjectural definition for 'groin' that does not match the commonly accepted definition[.]" As Defendant acknowledges, in the district court below, he neglected to object to the jury instructions or the State's comments during closing argument that he now disputes. Thus, he asks that we review this issue for fundamental error. "The doctrine of fundamental error

4

applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. One basis for "establishing fundamental error occurs when a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Nevarez*, 2010-NMCA-049, ¶ 24, 148 N.M. 820, 242 P.3d 387 (internal quotation marks and citation omitted). In such a context, we must first make "a determination as to whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 25. However, we have stated that "[t]here is no miscarriage of justice where, despite any misunderstanding by the jury, the circumstances of the case demonstrate that all the necessary elements of the offense were satisfied beyond a reasonable doubt." *Id.* ¶ 26.

**{13}** We note that aside from citing caselaw for the fundamental error standard of review and the "common meaning" for the definition of "groin," Defendant fails to present a comprehensive and developed argument explaining how the jury instructions or the State's descriptive statements during closing arguments constituted fundamental error. Defendant does not argue that UJI 14-925 was not the proper instruction in this case. Defendant merely asserts that "the prosecutor created an issue[,]" but does not elaborate or develop the issue any further. If the State created an issue of fundamental error during closing arguments, it is the Defendant's responsibility to establish this error. *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 (recognizing the three factors that influence an appellate court's decision for determining whether an error meets the threshold to reverse a conviction are "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and persuasive; and (3) whether the statement is invited by the defense"). Defendant has failed to establish or develop any error in this case. *Id.* ¶ 25 ("Only in the most exceptional circumstances should [the appellate court], with the limited perspective of a written record, determine that all the safeguards at trial level have failed [to address improper statements by counsel during closing argument and] should we reverse the verdict of a jury[.]"). "[T]his Court's policy is to refrain from reviewing unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be[;]" thus, we decline to review this undeveloped argument any further. *State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 (internal quotation marks and citation omitted).

c.       **Defendant Failed to Show He Received Ineffective Assistance of Counsel**

**{14}** Finally, pursuant to *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶¶ 17-24, 103 N.M. 655, 712 P.2d 1, Defendant argues that his trial counsel was ineffective as counsel did not object to the jury instructions or the State's reference to the term "groin" in closing arguments. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

**{15}** We note that while Defendant contends he was subjected to ineffective assistance of counsel, he does little more than cite to relevant caselaw. Additionally, he fails to provide

5

a developed argument or analysis that would assist this Court in determining whether a prima facie case for ineffective assistance of counsel was established. As we have stated, we will not review unclear or undeveloped arguments that would require us to speculate as to the party's intended argument. *See Urioste*, 2011-NMCA-121, ¶ 29. Accordingly, the Court is unable to properly analyze Defendant's ineffective assistance of counsel argument, and we must further conclude that Defendant has not established a prima facie case for ineffective assistance of counsel. Defendant can still pursue habeas corpus proceedings regarding this claim. *See State v. Hobbs*, 2016-NMCA-006, ¶¶ 19, 23, 363 P.3d 1259 (stating that there is a preference for habeas corpus proceedings as the avenue for adjudicating ineffective assistance of counsel claims, especially when the record fails to establish a prima facie case and further development is necessary), *cert. denied*, 2015-NMCERT-012, 370 P.3d 472.

## III.    CONCLUSION

{16}    For the foregoing reasons, we affirm Defendant's conviction.

{17}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**M. MONICA ZAMORA, Judge**