# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 14, 2018</u>

**NO. A-1-CA-34674**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**RICHARD SENA,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo
Santa Fe, NM

for Appellant

**OPINION**

**VARGAS, Judge.**

{1} A jury convicted Defendant Richard Sena of criminal sexual penetration (CSP), kidnapping, armed robbery, aggravated burglary, and criminal sexual contact (CSC). Defendant was sentenced to a term of forty years and six months. He appeals his conviction, alleging five separate assertions of error. First, Defendant claims the district court erred in failing to grant a mistrial following the State's comments during closing arguments about Defendant's demeanor during the testimony of Victim. Defendant next alleges that the district court failed to properly instruct the jury on the kidnapping charge by omitting the requirement that the State prove that Defendant's restraint of Victim was not incidental to the commission of another crime. Third, Defendant contends that the State failed to present sufficient evidence to support his convictions for first degree CSP and kidnapping. Fourth, Defendant argues his convictions for both aggravated burglary and CSP or CSC violate double jeopardy. Finally, Defendant argues the district court abused its discretion in admitting expert testimony regarding DNA evidence. We conclude that Defendant's convictions for both aggravated burglary and CSP/CSC violate double jeopardy and vacate Defendant's aggravated burglary conviction. Further, because the jury was not

properly instructed on kidnapping, we remand to the district court for a new trial on that count. We affirm Defendant's convictions on all other counts.

## I.    BACKGROUND

{2}    Victim, a seventy-three-year-old woman, awoke to an intruder, whom she identified at trial as Defendant, holding his gloved hand over her mouth and pointing a knife at her head. When she attempted to scream, Defendant threatened to kill her if she did not keep quiet. Defendant ordered her to get out of bed and take off her pajamas. Victim obeyed. Defendant asked where he could find Victim's purse, and she directed him to her closet where he retrieved the purse and took Victim's wallet. Victim informed Defendant that she needed to use the restroom, and she was permitted to walk to the restroom with Defendant following close behind. Once there, Defendant masturbated while Victim used the restroom. Defendant then directed Victim—still unclothed—to return to the bedroom and lie face down on the bed. Once Victim did so, Defendant penetrated her with his penis both vaginally and anally while she was lying on the bed. Victim also testified that Defendant fondled her breast and vaginally penetrated her with his fingers.

{3}    Defendant left the bedroom after approximately an hour, and Victim made two attempts to get up from the bed. The first was unsuccessful, as Defendant was still in the living room and warned her to get back on the bed. Victim complied, and lay on

2

the bed a while longer before again trying—this time successfully—to get off of the bed. When Victim entered the living room, she discovered her front door was standing open and her two cordless home phones, her wallet, and her rifle were gone. She locked the front door, put on a robe, and used her cell phone to call 911. Defendant never struck Victim, but she testified she felt as though she could not leave while he was in her home.

{4} The police arrived at Victim's home within a few minutes of her 911 call. Once there, the police discovered footprints in the mud outside Victim's window. They followed the footprints leading away from the house, ultimately arriving at another house in town approximately an hour and a half later where they found Defendant hiding in the back yard with socks on but without any shoes. The police found sneakers with tread matching the footprints outside Victim's home and a dark-colored, hooded sweatshirt at the house where Defendant was hiding. In a vehicle parked outside the home, the officers also found leather work gloves matching those described by Victim.

{5} Later that morning, Victim underwent a sexual assault examination, during which the Sexual Assault Nurse Examiner (SANE) found no injuries during an external examination, but did discover that Victim had a half-centimeter "open area" that was "consistent with force." The SANE also collected various swabs from Victim

and Defendant. These items were subjected to DNA testing, along with two sheets from Victim's bed and Defendant's boxer shorts.

{6}     During closing arguments, the State drew the jury's attention to Defendant's demeanor during Victim's testimony, stating, "did you notice also, ladies and gentlemen, when she testified, that man wouldn't even look at her. He watched every other witness on the stand." At that point, defense counsel objected and moved for a mistrial, arguing that the State was commenting on Defendant's silence and that there was no evidence in the record regarding what Defendant did or did not do while Victim was testifying. The court overruled Defendant's objection, but stated in open court that "the jury will have to rely on their own memories as to what they observed." The State resumed its closing argument stating, "Did you watch him in the courtroom when she took the stand? He wouldn't even look at her. He looked at every other witness in the eye, but he wouldn't look at her. And why wouldn't he look at her? Because he knew what he'd done. He knew what he did."

## II.     DISCUSSION

### A.     The Prosecutor's Closing Argument Comments About Defendant's Demeanor

{7}     We review the denial of Defendant's motion for mistrial based on prosecutorial misconduct for an abuse of discretion. *See State v. Fry*, 2006-NMSC-001, ¶ 50, 138

N.M. 700, 126 P.3d 516. An abuse of discretion occurs where the district court acts "in an obviously erroneous, arbitrary, or unwarranted manner." *Id.* (internal quotation marks and citation omitted). Defendant argues that the prosecutor's action of calling the jury's attention to Defendant's demeanor during Victim's testimony was equivalent to commenting on facts not in evidence. Further, Defendant contends that because he chose not to testify, it was reversible error for the State, during closing argument, to attribute a testimonial value to Defendant's demeanor during Victim's testimony, thereby suggesting Defendant's demeanor was testimonial or somehow relevant to the issue of guilt or innocence. The propriety of a prosecutor's comments on the courtroom demeanor of a defendant who elects not to testify is an issue of first impression in New Mexico.

{8}    Although no New Mexico appellate court has addressed this issue, state and federal courts throughout the country have ruled on the propriety of commenting on a non-testifying defendant's courtroom demeanor. A majority of jurisdictions disallow such comments, though their reasons for doing so vary. Some courts reason that such comments are not probative of the issue of guilt or innocence, some equate them to argument of facts not in evidence, some rely on a combination of both those reasons, and some simply characterize them as improper without any additional analysis.

{9}     Several states take a broad view when disallowing comment on a non-testifying defendant's demeanor by reasoning that it is not probative of the issue of guilt or innocence. *See Hughes v. State*, 437 A.2d 559, 572 (Del. 1981) (concluding that the prosecution's comments on the defendant's courtroom demeanor were improper, explaining that they are "irrelevant" and "pregnant with potential prejudice"); *Commonwealth v. Young*, 505 N.E.2d 186, 188-90 (Mass. 1987) (distinguishing between permissible general comments on a defendant's courtroom demeanor and improper comments on demeanor that encourage an inference of guilt, stating that "a prosecutor should never argue that an inference of guilt should be drawn from proper conduct"). Other states take a more formalistic evidentiary approach by reasoning that a prosecutor's comments about a non-testifying defendant's demeanor amount to argument of facts not in evidence. *See State v. John B.*, 925 A.2d 1235, 1243 (Conn. App. Ct. 2007) (concluding that the prosecution's reference to the defendant's courtroom demeanor was improperly based on "matters extrinsic to the evidence" where the defendant did not testify and, aside from witness identifications, his presence in the courtroom was not otherwise introduced into evidence); *State v. Smith*, 984 P.2d 1276, 1286 (Haw. Ct. App. 1999) (stating that "[u]nless and until [the defendant's] reaction during the trial was lawfully introduced as evidence, it was not a proper subject for argument to the jury" and concluding that comments on the

6

defendant's reaction violated his right to have his guilt or innocence determined solely on the basis of the evidence presented at trial); *People v. Foss*, 559 N.E.2d 254, 256 (Ill. App. Ct. 1990) (concluding that the prosecutor's invitation during opening statement that the jury consider the defendant's demeanor was improper because the defendant's "demeanor, in any respect other than when he is testifying, does not constitute evidence"). Some states rely on both reasons for disallowing comment on a non-testifying defendant's demeanor. *See Mayberry v. State*, 830 S.W.2d 176, 178 (Tex. App. 1992) ("Because a defendant's nontestimonial demeanor is not evidence, it provides no basis for reasonable deductions from the evidence. Courtroom demeanor is simply irrelevant to the issue of guilt."); *see also People v. Heishman*, 753 P.2d 629, 662-63 (Cal. 1988) (stating that prosecutorial references to a non-testifying defendant's demeanor or behavior in the courtroom are improper because demeanor evidence (1) is relevant only as to the credibility of a witness, (2) infringes on a defendant's right not to testify, and (3) "violates the rule that criminal conduct cannot be inferred from bad character"), *abrogated on other grounds by People v. Diaz*, 345 P.3d 62, 69 (Cal. 2015).

{10} Other states simply characterize comments on the demeanor of a non-testifying defendant as improper without expounding on their reason for doing so. *See Pope v. Wainwright*, 496 So. 2d 798, 802 (Fla. 1986) (acknowledging that "comments on a

7

defendant's demeanor off the witness stand are clearly improper"); *Good v. State*, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986) (en banc) (concluding that a prosecutor's comments regarding a defendant's nontestimonial courtroom demeanor are improper). Further, some federal courts have similarly concluded that a comment on a non-testifying defendant's courtroom demeanor constitutes error—either based on a violation of the defendant's constitutional rights or because it holds no weight in a consideration of guilt or innocence. *See United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008) (holding that courtroom demeanor of a non-testifying defendant is "an improper subject for comment by a prosecuting attorney" because it is "not in any sense legally relevant to the question of his guilt or innocence" (internal quotation marks and citation omitted)); *United States v. Schuler*, 813 F.2d 978, 981 (9th Cir. 1987) (concluding that "in the absence of a curative instruction from the court, a prosecutor's comment on a defendant's off-the-stand behavior constitutes a violation of the due process clause of the [F]ifth [A]mendment"); *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984) (concluding that the prosecutor was not free to comment on the defendant's behavior off the witness stand, as "a prosecutor may not seek to obtain a conviction by going beyond the evidence before the jury" and the defendant's behavior off the witness stand was not evidence subject to comment (internal quotation marks and citation omitted)); *United States v. Carroll*, 678 F.2d

8

1208, 1209-10 (4th Cir. 1982) (concluding that where the prosecution "describes the courtroom behavior of a defendant who has not testified, and then goes on to tell the jury that it may consider that behavior as evidence of guilt," the prosecutor violates the defendant's Fifth and Sixth Amendment rights); *United States v. Wright*, 489 F.2d 1181, 1186 (D.C. Cir. 1973) (rejecting the idea that the defendant's "courtroom behavior off the witness stand is in any sense legally relevant to the question of his guilt or innocence").

{11}     A minority of jurisdictions, however, allow the prosecutor to comment on the courtroom demeanor of a non-testifying defendant. *See Shaw v. State*, 207 So. 3d 79, 126-27 (Ala. Crim. App. 2014) (characterizing the prosecution's comments that the defendant "never shed a tear" and "didn't care at all" throughout the presentation of photographic evidence during trial as proper, reasoning that the comments were aimed at the defendant's demeanor, not his failure to testify (internal quotation marks omitted)); *Armstrong v. State*, 233 S.W.3d 627, 638 (Ark. 2006) (finding no reversible error where the prosecution directed the jury to recall the defendant's reaction to photographic evidence, but acknowledging that the prosecution was limited to evidence in the record and that a defendant's face and body are physical evidence); *Smith v. State*, 669 S.E.2d 98, 104 (Ga. 2008) (stating that "it is not improper for the prosecutor to comment in closing argument on a non-testifying

defendant's appearance and facial expressions"); *Hunt v. Commonwealth*, 304 S.W.3d 15, 38 (Ky. 2009) ("A prosecutor is entitled to comment on the courtroom demeanor of a defendant."); *State v. Brown*, 358 S.E.2d 1, 15 (N.C. 1987) (finding no error in the prosecution's comments on the defendant's courtroom demeanor because it "calls to the jurors' attention the fact that evidence is not only what they hear on the stand but what they witness in the courtroom"); *see also State v. Lawson*, 595 N.E.2d 902, 911 (Ohio 1992) (applying the rule that a "defendant's face and body are physical evidence" to reach the conclusion that it was "permissible for the prosecution to comment on the accused's physical appearance" (internal quotation marks and citation omitted)).

{12} We agree with the majority of jurisdictions and hold that commenting on the demeanor of a non-testifying defendant is improper, as it is neither probative of innocence or guilt, nor is it evidence that an appellate court can properly review.

{13} In New Mexico, we afford trial judges broad discretion in managing closing argument because they "are in the best position to assess the impact of any questionable comment." *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348. The prosecution has similarly wide latitude during closing arguments. *See State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254. A prosecutor's

remarks must, however, be based on the evidence or made in response to the defendant's arguments. *Id*.

{14} In this case, the State's comments were not based on the evidence. Nothing in the record suggests Defendant's behavior or demeanor during trial came into evidence. In addition to arguing a fact not in evidence, we further note the prosecutor in this case encouraged the jury to infer guilt from Defendant's courtroom demeanor. Such an inference is particularly troubling where we perceive no impropriety in the demeanor that was the subject of the comments. The prosecutor suggested the jury draw just such an inference in this case by stating, "He wouldn't look at her. And why wouldn't he look at her? Because he knew what he'd done. He knew what he did."

{15} In light of our conclusion that comments on the demeanor of a non-testifying defendant are not probative of innocence or guilt and requirement that a prosecutor's argument be based on the evidence, we hold that prosecutors are prohibited from commenting on a non-testifying defendant's courtroom demeanor where, as here, it is not evidence in the record. We therefore conclude that it was improper for the State to argue that Defendant's alleged failure to make eye contact with Victim during her testimony was evidence of Defendant's guilt.

{16} Having concluded that the State erred, we next examine whether that error warrants reversal. When reviewing statements made during closing arguments for

11

reversible error, we begin by considering three factors. First, we consider whether the comments made during closing argument invade "some distinct constitutional protection" such as a defendant's post-*Miranda* silence or a defendant's exercise of his Fourth Amendment rights in refusing to consent to a warrantless search. *Sosa*, 2009-NMSC-056, ¶¶ 26-28. Second, we evaluate whether the statement made "is isolated and brief, or repeated and pervasive[.]" *Id.* ¶ 26. Generally, "an isolated comment made during closing argument is not sufficient to warrant reversal." *Fry*, 2006-NMSC-001, ¶ 52 (internal quotation marks and citation omitted). Reversal of the trial court verdict is warranted "[o]nly in the most exceptional circumstances." *Sosa*, 2009-NMSC-056, ¶ 25. Instead, the misconduct complained of is reversible error where it is so "pronounced and persistent" that it carries "a probable cumulative effect upon the jury." *Id.* ¶ 30 (internal quotation marks and citations omitted). Third, we consider "whether the statement is invited by the defense." *Id.* ¶ 26. Courts are unlikely to find error "where the defense has opened the door to the prosecutor's comments by its own argument or reference to facts not in evidence." *Id.* ¶ 33 (internal quotation marks and citation omitted).

{17}    "[T]he common thread running through the cases finding reversible error is that the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* ¶ 34.

12

When analyzing whether an error warrants reversal, "context is paramount[,]" and the three factors listed above are only "useful guides." *Id.* Our courts also consider whether the evidence of guilt is overwhelming, whether the improper statement is corrected by counsel or limited by the court, or whether the fact manipulated by the statement is determinative to the outcome of the case. *See id.*

{18} Here, the State's comments did not invade a "distinct constitutional protection." While they may have run afoul of the presumption of innocence, we note that the presumption of innocence is not constitutionally mandated. *See Taylor v. Kentucky*, 436 U.S. 478, 485-86 (1978) (acknowledging that "presumption of innocence"—the concept that Defendant is "entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on . . . other circumstances not adduced as proof at trial,"—is not constitutionally mandated, but is aimed at protecting principles similar to due process (internal quotation marks and citation omitted)); *Sosa*, 2009-NMSC-056, ¶¶ 26-28. The prosecutor's comments in this case were confined to closing argument and were relatively brief. They were not, however, invited by or in response to the defense's argument.

{19} Looking more broadly at the prosecutor's statements in the context of the entire trial, the State presented significant evidence of Defendant's guilt, including Victim's graphic and uncontroverted testimony, evidence that police tracked Defendant's

footprints to the home where he was apprehended, and Defendant's own admissions of guilt. During jail phone conversations, Defendant admitted that he committed the property crimes, though he denied committing the sexual offenses. When police apprehended Defendant on the night of the incident, however, Defendant spontaneously stated, "it doesn't [expletive] matter—none of it does—what you guys are investigating. I will be locked up for the rest of my life," suggesting he was aware that police were investigating something more than a burglary. Regarding the prosecutor's statements specifically, we note that the court clarified, "the jury will have to rely on their own memories as to what they observed," despite having overruled Defendant's objection. Though the court did not directly address the jury, it made the statement in open court with the jury present. In doing so, the court implicitly recognized a potential for prejudice to Defendant that warranted advising the jury that its consideration of Defendant's courtroom demeanor should be limited to its own observations. "The jury is presumed to follow the court's [curative] instructions." *State v. Gonzales*, 1992-NMSC-003, ¶ 35, 113 N.M. 221, 824 P.2d 1023, *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426; *see State v. Cates*, No. 30,022, dec. ¶ 33 (N.M. Sup. Ct. May 11, 2010) (non-precedential) (applying the general presumption that the jury follows curative instructions specifically). The prosecutor's comments, though improper, were limited

14

by the court and stopped short of commenting on Defendant's silence. Taking into account the significant evidence of Defendant's guilt, the nature and duration of the prosecutor's comments, and the court's statement that the jury's consideration of Defendant's demeanor should be limited to its own observations, we do not see, and Defendant has not pointed to, specifically, how it is that he was deprived of a fair trial in this case. Notwithstanding that the prosecutor's comments on Defendant's courtroom demeanor do not warrant reversal here, we caution against use of such practices in the future, as it is improper and ripe with potential prejudice. We affirm the district court's denial of Defendant's motion for mistrial.

**B.    Kidnapping Instruction**

{20}    Defendant next argues that the district court's kidnapping instruction was in error, as it omitted an essential element of the crime when it failed to instruct the jury that any restraint of Victim must have been more than incidental. Defendant failed to object to the instructions given at trial, so we review for fundamental error. *See State v. Romero*, 2013-NMCA-101, ¶ 19, 311 P.3d 1205. To prevail under a fundamental error analysis, a party "must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation

15

omitted). Generally, "fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. When an essential element is omitted, courts look to "whether there was any evidence or suggestion in the facts, however slight, that could have put the omitted element in issue." *State v. Lopez*, 1996-NMSC-036, ¶ 13, 122 N.M. 63, 920 P.2d 1017 (alteration, internal quotation marks, and citation omitted).

{21} The incident occurred in November 2012. The jury was instructed during Defendant's trial in 2014 that, to find Defendant guilty of kidnapping, the State had to prove beyond a reasonable doubt that Defendant "restrained or confined [Victim] by force or intimidation" and that Defendant "intended to inflict a sexual offense on [Victim.]" This instruction was modeled after the language of the Uniform Jury Instruction (UJI) in place at the time. *See* UJI 14-403 NMRA (1997). In August 2012, this Court decided *State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238, which held that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." The kidnapping UJI was amended in 2015 to follow the holding in *Trujillo*, and while still requiring the state to prove restraint by force or intimidation and intent to inflict a sexual offense on the victim, the instruction also requires the state to prove that the "taking or restraint . . . of [the victim] was not

16

slight, inconsequential, or merely incidental to the commission of another crime[.]" UJI 14-403 NMRA (2015).

{22} Defendant argues that the district court committed fundamental error by improperly instructing the jury regarding intent. The instruction given to the jury required proof that Defendant "intended to inflict" a sexual offense, while the UJI required proof that Defendant "intended to hold" Victim to inflict a sexual offense. Defendant also argues that the district court committed fundamental error by failing to instruct the jury regarding *Trujillo*'s rejection of "incidental restraint" as a basis for kidnapping. We address the latter argument first, and finding it dispositive, decline to address Defendant's intent argument.

{23} In *Trujillo*, this Court looked at whether the Legislature intended to punish the defendant's "momentary restraint of [the v]ictim in the course of a fight as kidnapping[.]" 2012-NMCA-112, ¶ 22. After consulting our state's kidnapping jurisprudence, as well as that of other jurisdictions, this Court adopted a view used in a majority of other jurisdictions, that "kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other felonies." *Id.* ¶ 31 (internal quotation marks and citation omitted). Though we did not adopt any particular test to be used in determining whether a restraint is "incidental," we acknowledged that the basic inquiry is "whether the restraint or movement increases

17

the culpability of the defendant over and above his culpability for the other crime." *Id.* ¶ 38 (internal quotation marks and citation omitted). In answering that question, we considered whether the restraint was longer or greater than necessary to commit the other crime, whether the restraint subjected the victim to a substantially greater risk of harm, and whether the restraint increased the length or severity of the attack. *Id.* ¶ 39. Although we ruled as a matter of law that the Legislature did not intend for the defendant's conduct to constitute kidnapping, we also acknowledged that "[a] more complicated factual scenario would present a jury question—submitted under appropriate instructions—as to whether the restraint involved was merely incidental to the other crime." *Id.* ¶ 42.

{24} This is just such a case. It involves a more complicated factual scenario than *Trujillo* that undoubtedly presents a jury question. However, it was not submitted to the jury with appropriate instructions. The instructions submitted to the jury here omitted any and all reference to the potentially incidental nature of the restraint. Our opinion in *Trujillo* qualified a jury's consideration of restraint, confinement, or transportation, as it is used in the UJI, to include only that restraint, which is not merely incidental to the commission of another crime. Indeed, that limitation has been incorporated into the 2015 version of the kidnapping UJI, which limits consideration

18

of restraint to only that which is "not slight, inconsequential, or merely incidental to the commission of another crime[.]" UJI 14-403 (2015).

{25} According to Victim's testimony, she was restrained both before and after the sexual offense occurred: first by threat with a knife, and second by menacing instruction from another room. It is for the jury to determine whether either or both of these restraints were slight, inconsequential, or incidental to the commission of the sexual offense. Indeed, that determination is an essential inquiry under *Trujillo* and its progeny. There can be little doubt that the incidental restraint requirement of *Trujillo* was established well before Defendant's trial. The jury instruction used at trial in 2014, patterned on the 1997 version of UJI 14-403, failed to adequately instruct the jury on restraint as interpreted in *Trujillo*. *See State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633 (acknowledging that "failure to instruct the jury on an essential element . . . ordinarily is fundamental error even when the defendant fails to object or offer a curative instruction"). The omission of incidental restraint from the jury instructions, therefore, constitutes fundamental error, as the jury could have convicted Defendant based upon a deficient understanding of the legal meaning of restraint as an essential element of kidnapping.

## C. Sufficiency of the Evidence

{26} Defendant challenges the sufficiency of the evidence supporting his convictions for first degree CSP and kidnapping. "The test to determine the sufficiency of evidence in New Mexico is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (omission, alteration, internal quotation marks, and citation omitted). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). When determining the sufficiency of the evidence, we view the evidence "in a light most favorable to the verdict," *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72, and disregard contrary evidence. *See State v. Salazar*, 1997-NMSC-044, ¶ 44, 123 N.M. 778, 945 P.2d 996. It is for the jury to resolve factual discrepancies arising from conflicting evidence, and the reviewing court cannot "weigh the evidence or substitute its judgment for that of the jury as long as there is sufficient evidence to support the verdict." *State v. Nevarez*, 2010-NMCA-049, ¶ 32, 148 N.M. 820, 242 P.3d 387 (alteration, internal quotation marks, and citation omitted). The question before this Court is whether the district court's decision "is supported by substantial evidence, not whether the court

20

could have reached a different conclusion." *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

**1.      First Degree CSP—Mental Anguish**

{27}      Defendant argues that the evidence presented by the State does not establish that Victim suffered great mental anguish as a result of the incident and that the evidence is therefore insufficient to support his conviction for first degree CSP. CSP in the first degree is that which is perpetrated "by the use of force or coercion that results in great bodily harm or great mental anguish to the victim." NMSA 1978, § 30-9-11(D)(2) (2009). "[G]reat mental anguish" means "psychological or emotional damage marked by extreme change of behavior or severe physical symptoms." UJI 14-980 NMRA; *see* NMSA 1978, § 30-9-10(B) (2005) (defining great mental anguish as "psychological or emotional damage that requires psychiatric or psychological treatment or care, either on an inpatient or outpatient basis, and is characterized by extreme behavioral change or severe physical symptoms"); UJI 14-980 comm. cmt. (interpreting a statute's reference to psychiatric or psychological treatment as "a vehicle to demonstrate the severity of the mental anguish being defined" and explaining that "[i]t was not intended to be an element of the definition that the victim actually received such care").

{28} The evidence presented at trial was that three days after the incident, Victim left New Mexico and moved in with her daughter in Indiana, staying there for eight months because she felt unable to live alone. Nothing in the record suggests she planned to make this move prior to the incident. Victim testified that she experienced "constant flashbacks," but she did not receive medication or counseling as a result of the incident. Victim also testified that as a result of the daily flashbacks, she had trouble concentrating and was unable to drive for a period of time. Seven months after the incident, Victim began living by herself again, but as of the date of trial, she had not returned to her home in Clovis where the incident took place. An officer testified that almost immediately after the incident, Victim behaved as though she was in shock, traumatized, mad, and upset. Victim told the officer that she did not want to be alone, and while the officer was with Victim, she alternated between crying and expressing anger.

{29} Defendant suggests that the evidence of Victim's post-incident symptoms are similar to or less extreme than those discussed in *State v. Barraza*, 1990-NMCA-026, 110 N.M. 45, 791 P.2d 799. *Barraza* is of no assistance to Defendant. In *Barraza*, the defendant was charged with two counts of second degree CSP, which required the state to prove that the defendant's actions caused the victim mental anguish rather than great mental anguish, as required to prove first degree CSP. *Id.* ¶¶ 1, 9. The

22

evidence presented at trial was that the victim experienced mood swings between depression and anger, an emotional inability to re-enroll in school, and elevated drinking habits. *See id.* ¶ 9. She also planned to move to avoid bad memories and embarrassment associated with the alleged rape. *Id.* This Court concluded that these symptoms were sufficient to constitute mental anguish to support a second degree CSP conviction. *Id.* ¶ 11.

{30} Here, Victim's behavioral changes were in many ways more extreme, concrete, and immediate than the victim in *Barraza*. Unlike the victim in *Barraza*, Victim not only planned to move, but effectuated the move almost immediately after the incident. At the time, she was over seventy years of age, uprooted her life, and moved across the country. She went from being self-sufficient enough to live on her own to having to move in with her daughter and being unable to drive. Victim's day-to-day lifestyle changed drastically, and she suffered daily flashbacks and exhibited mood swings immediately after the incident. As Victim's actions and behavior following the incident were more extreme than those set out in *Barraza*, the evidence was sufficient to support a conclusion that Victim suffered great mental anguish as a result of the incident. *See generally Nevarez*, 2010-NMCA-049, ¶ 32 (noting that the reviewing court cannot "weigh the evidence or substitute its judgment for that of the jury" (alteration, internal quotation marks, and citation omitted)).

23

## 2. Kidnapping

{31} "[W]here the trial court errs by failing to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant under the erroneous jury instruction." *State v. Rosaire*, 1996-NMCA-115, ¶ 20, 123 N.M. 250, 939 P.2d 597. Though the jury instruction given at trial was erroneous because it failed to instruct the jury on an essential element, "we review the sufficiency of the evidence in light of the erroneous jury instruction." *Id.* The jury in this case was instructed that the State had to prove that Defendant "restrained or confined [Victim] by force or intimidation[,]" with the intent to inflict a sexual offense on her. We look at the evidence in the light most favorable to the State to determine whether it was sufficient to prove those elements beyond a reasonable doubt. *See Garcia*, 2005-NMSC-017, ¶ 12.

{32} Defendant argues that the State failed to present sufficient evidence of kidnapping, either because it failed to show Defendant's intent was contemporaneous with restraint or because any restraint or confinement that occurred was incidental to another crime. We addressed Defendant's argument regarding incidental restraint above, and because we review for sufficiency based on the flawed instruction given, which did not include incidental restraint, we do not address it. Regarding intent, however, Defendant asserts that there was no proof that he restrained Victim with the

24

intent to inflict a sexual offense because the "primary evidence of kidnapping" occurred after the sexual offense. Defendant refers to Victim's failed attempt to get off the bed following the sexual offense as the "primary evidence of kidnapping." We are unpersuaded by Defendant's argument, however, because nothing in the record indicates that the jury found Defendant guilty based on this evidence. Indeed, the evidence presented at trial also established that prior to the sexual offense, Defendant threatened Victim with a knife, only allowed her to travel from one room of the house to another while he followed her closely, and ultimately ordered her to return to the bedroom.

{33}     Based on our review of the record, we conclude that the evidence regarding the threat, following Victim, and ordering her from one room of the house to another was sufficient to support Defendant's conviction for kidnapping under the flawed instructions given. A jury could reasonably conclude Defendant restricted or confined Victim using intimidation when he threatened her life using a knife. The jury could then infer from Defendant's actions of ordering Victim to take off her pajamas and masturbating while she used the restroom that Defendant restrained Victim while intending to inflict a sexual offense on her. *See State v. Muraida*, 2014-NMCA-060, ¶ 18, 326 P.3d 1113 ("It is well established that the fact finder may infer from circumstantial evidence that the defendant acted with the requisite intent; direct

25

evidence of the defendant's state of mind is not required."). We conclude that the evidence produced at trial was sufficient to support Defendant's kidnapping conviction. Although we reverse Defendant's kidnapping conviction and remand for a new trial based on deficiencies in the jury instructions, we address his sufficiency claim to ensure no double jeopardy concerns are implicated. *See State v. Mascareñas*, 2000-NMSC-017, ¶ 31, 129 N.M. 230, 4 P.3d 1221 (deeming it "prudent" to address a sufficiency claim where reversing for fundamental error in a jury instruction).

**D.     Double Jeopardy**

{34}     Defendant argues that his convictions for aggravated burglary and for CSP/CSC cannot stand, as his convictions for all of these offenses result in multiple punishments for the same conduct and therefore violate double jeopardy principles. We review double jeopardy claims de novo. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024.

{35}     The constitution protects against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. There are two types of multiple punishment cases: (1) unit of prosecution cases, in which an individual is convicted of multiple violations of the same criminal statute; and (2) double-description cases, in which a single act results

in multiple convictions under different statutes. *Id.* ¶¶ 8-9. Defendant's arguments, involving separate statutes, raise only double-description concerns.

{36} Our courts apply a two-step inquiry to double-description claims. *Id.* ¶ 25. First, we analyze the factual question, "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes[,]" and if so, we consider the legal question, "whether the [L]egislature intended to create separately punishable offenses." *Id.* "If it reasonably can be said that the conduct is unitary, then [we] must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, [the] inquiry is at an end." *Id.* ¶ 28.

{37} In this case, the charge of CSP required the State to prove that Defendant caused "the insertion, to any extent, of a finger into the vagina of [Victim], by the use of force, coercion or threats of force or violence, and [D]efendant's acts resulted in . . . great mental anguish." The charge of CSC was based on the touching of Victim's unclothed breast without her consent.

{38} Defendant's conviction for aggravated burglary, on the other hand, required the State to prove, among other things, that: "[D]efendant was armed with a knife; OR [D]efendant became armed with a firearm after entering; OR [D]efendant touched or applied force to [Victim] in a rude or angry manner while entering or leaving, or while inside[.]" As we have noted, the State argues that the battery element of

27

touching or applying force was satisfied by evidence that Defendant placed his hand over Victim's mouth and threatened to kill her. According to the State, that conduct was factually distinguishable from the conduct that gave rise to the CSC/CSP convictions. However, the record does not indicate which of the three alternatives above the jury relied upon in reaching its general verdict finding Defendant guilty on the charge of aggravated burglary.

{39}     We begin with whether the conduct here was unitary. In contrast to Defendant's position, the State contends that the conduct required for aggravated burglary in this case is not unitary because in addition to touching Victim during the sexual assaults, Defendant unlawfully touched Victim when he covered her mouth with his hand. The State's argument relies on the assumption that, when the evidence provides alternative facts to support a finding of battery and there is no indication of which facts the jury relied on in reaching its verdict, we may affirm the conviction without violating double jeopardy principles. We disagree with the State.

{40}     Our Supreme Court's decision in *State v. Foster*, 1999-NMSC-007, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683—which neither party cited on appeal—is on point. In *Foster*, the defendant argued that his convictions for aggravated kidnapping and armed robbery violated his constitutional right to be free from double jeopardy

28

because the conduct required for those crimes was subsumed by his first degree felony murder conviction. *Id.* ¶ 26. The defendant and the state relied on different facts to support their theory of each conviction and, on that basis, claimed that the conduct was or was not unitary. *Id.* ¶¶ 24, 26. According to the state, the conduct was not unitary because the jury instructions provided alternative bases for a conviction notwithstanding that there was "no indication of which alternative the jury relied upon in reaching a general verdict[.]" *Id.* ¶ 26. Thus, the state asserted, there could be no double jeopardy violation. *Id.* Our Supreme Court rejected the state's argument noting that it "must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that *would* result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative." *Id.* ¶ 28 (emphasis added). Using this reasoning, the *Foster* Court reversed defendant's armed robbery conviction based on a double jeopardy violation. *Id.* ¶ 40.

{41} Applying *Foster*, we presume that the jury relied on the third alternative—battery—and the evidence proffered at trial established two instances in which Defendant's conduct could have given rise to a conviction: the act of putting his hand over Victim's mouth, or the touching that resulted from lying on top of Victim in commission of the CSP/CSC. Consistent with *Foster*, we further presume

29

the jury used the touching giving rise to the CSP/CSC conviction as grounds for the battery alternative in Defendant's aggravated burglary conviction. Finally, because there is no evidence of any intervening events, a significant separation in time or physical distance, or a change in Defendant's mental state between the touching giving rise to the battery and the CSP/CSC, we conclude that the conduct was unitary. *See State v. Lucero*, 2015-NMCA-040, ¶ 22, 346 P.3d 1175 (requiring consideration of "whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act" in considering whether conduct is unitary (internal quotation marks and citation omitted)).

{42} Having concluded that this issue involves unitary conduct, we turn our analysis to the question of legislative intent. "Determinations of legislative intent, like double jeopardy, present issues of law that are reviewed de novo, with the ultimate goal of such review to be facilitating and promoting the [L]egislature's accomplishment of its purpose." *State v. Montoya*, 2013-NMSC-020, ¶ 29, 306 P.3d 426 (alterations, internal quotation marks, and citation omitted). When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether each provision requires proof of a fact that the other does not.

*Swafford*, 1991-NMSC-043, ¶¶ 10, 30. If not, one offense is logically subsumed within the other, and "punishment cannot be had for both." *Id.* ¶ 30.

{43} In *State v. Gutierrez*, our Supreme Court modified the *Blockburger* analysis for double jeopardy claims involving statutes that are "vague and unspecific" or "written with many alternatives[.]" 2011-NMSC-024, ¶¶ 58-59, 150 N.M. 232, 258 P.3d 1024 (emphasis, internal quotation marks, and citation omitted). Accordingly, "the application of *Blockburger* should not be so mechanical that it is enough for two statutes to have different elements." *State v. Swick*, 2012-NMSC-018, ¶ 21, 279 P.3d 747. That is, we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary. *Gutierrez*, 2011-NMSC-024, ¶¶ 58-59. We do so "independent of the particular facts of the case . . . by examining the charging documents and the jury instructions given in the case." *Swick*, 2012-NMSC-018, ¶ 21

{44} The aggravated burglary statute is broad and contains many alternatives. *See* § 30-16-4. For example, it protects a wide variety of structures, including "any vehicle, watercraft, aircraft, dwelling or other structure movable or immovable." Section 30-16-4. The battery alternative, the focus of our analysis here, is likewise defined in broad terms to include "the unlawful, intentional touching or application

31

of force[,]" done in "a rude, insolent, or angry manner." Section 30-3-4. Both statutes provide numerous ways in which a violation may occur and a conviction be attained. We therefore must look "beyond facial statutory language to the actual legal theory in the particular case by considering such resources as the evidence, the charging documents, and the jury instructions." *Montoya*, 2013-NMSC-020, ¶ 49.

{45}    Our review of the record reveals that the State never communicated any theory to the jury nor did it argue any specific facts to support the aggravated burglary charge. Even the charging documents and jury instruction for aggravated burglary contained broad, boilerplate language straight from the statute, providing no insight into the State's theory of the case. *See State v. Montoya*, 2011-NMCA-074, ¶ 43, 150 N.M. 415, 259 P.3d 820 (observing that the state can avoid double jeopardy violations by identifying specific, non-unitary conduct in jury instructions). Because the State failed to provide any legal theory of the crime, and we have found none in the record, we conclude that Defendant's aggravated burglary conviction is subsumed by the CSP/CSC convictions, and Defendant was therefore subjected to two convictions for the same offense in violation of double jeopardy. We must now decide which conviction to vacate.

{46}    Defendant asks that we vacate either the CSC or aggravated burglary conviction, but he does not provide any additional explanation, argument or citation

32

to authority as to the basis for his request. The State's analysis of the double jeopardy issue ends with its argument that the underlying conduct was not unitary. We remind the parties that it is their responsibility to fully develop arguments on appeal and lament their failure to do so on this issue.

{47} That Defendant's conviction for one of the offenses must be reversed is clear. *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 ("[A] general verdict must be reversed if one of the alternative bases of conviction is legally inadequate[.]"). What is not clear, however, is which offense we must vacate. When one of two otherwise valid convictions must be vacated to remedy a double jeopardy violation, we vacate the conviction carrying the shorter sentence. *See Montoya*, 2013-NMSC-020, ¶ 55. Here, the district court imposed a nineteen-year sentence for the CSP conviction, a two-and-one-half-year sentence for the CSC conviction, and a ten-year sentence for aggravated burglary.

{48} Vacating the conviction with the shortest sentence does not remedy the double jeopardy violation in this case. Although the CSC conviction clearly carries the shortest sentence, vacating that conviction continues to allow for two convictions for the same crime resulting in multiple punishments for the same conduct. The jury could have found that Defendant's actions that gave rise to the CSP conviction were the same as those that gave rise to the aggravated burglary conviction, yet both those

33

convictions would remain. When ambiguity in the record leaves two convictions equally likely to violate double jeopardy when combined with a third, and the rule that we vacate the shortest sentence is rendered impractical due to the potential for a continued violation following remand, we conclude that it is appropriate to vacate the conviction that, though not imposing the shortest sentence, remedies the double jeopardy violations. Accordingly, we vacate Defendant's aggravated burglary conviction.

**E.    Admission of DNA Evidence**

{49}    Hours after the incident occurred, Victim underwent a sexual assault examination. The SANE who examined Victim found no injuries when conducting an external examination. The SANE did, however, note that Victim had a half-centimeter "open area" that was "consistent with force." The SANE collected a pubic hair comb, oral swabs, vaginal swabs, cervical swabs, anal swabs, thigh swabs, and a blood sample from Victim. A SANE also collected oral swabs, penal swabs, pubic hair combing, swabbing of facial hair, and a swabbing of lower abdomen hair from Defendant. These items were subjected to DNA testing, along with two sheets from Victim's bed and Defendant's boxer shorts.

{50}    No semen was found on any of the items or on any of the swabs taken. There was no human male DNA on Victim's vaginal, cervical, or anal swabs, nor was there

any in her pubic hair combing. Human male DNA was detected on one of the thigh swabs, but in insufficient amounts to allow for any further DNA testing. Defendant's expert witness characterized the amount of DNA from this swab as unreliable. Samples taken from underneath Defendant's fingernails contained Victim's DNA. DNA testing eliminated Victim as a contributor to the DNA found on Defendant's boxer shorts. The swabs taken from Defendant's lower abdomen revealed the presence of DNA from two or more individuals, and Victim could not be eliminated as a possible contributor to that DNA mixture. Defendant's expert testified, however, that there was a "degree of inaccuracy" to the abdomen swab results by emphasizing that there was more male DNA on the abdomen swab than total DNA, indicating female DNA was minimal or nonexistent. Both the State's expert and Defendant's expert testified regarding the transfer of DNA and the ways in which someone's DNA could appear on another person.

{51}     Defendant argues the district court erred in admitting testimony regarding the DNA results of the thigh swab taken from Victim and the lower abdomen swab taken from Defendant. Defendant argues that the existence of male DNA on the thigh swab was irrelevant because it could not be tied to a particular male and that the information was unhelpful to the jury and prejudicial. Defendant similarly argues that informing the jury that Victim could not be ruled out as a contributor of DNA was

35

unhelpful to the jury but highly prejudicial. Defendant's argument that the DNA evidence was "unhelpful . . . but . . . also highly prejudicial" is akin to a Rule 11-403 NMRA challenge. *See id.* (allowing for the exclusion of evidence where its "probative value is substantially outweighed" by a danger of unfair prejudice, confusing the issues, or misleading the jury).

{52} Admission of expert testimony and scientific evidence is a matter "within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Anderson*, 1994-NMSC-089, ¶ 17, 118 N.M. 284, 881 P.2d 29 (internal quotation marks and citation omitted). An expert witness may testify if doing so "will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 11-702 NMRA. Whether expert testimony will assist the trier of fact is a question of relevance. *Anderson*, 1994-NMSC-089, ¶ 14. Evidence is relevant where it "has any tendency to make a fact more or less probable than it would be without the evidence" and where it "is of consequence in determining the action." Rule 11-401 NMRA. Any doubt about relevance should be resolved in favor of admissibility. *State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845. A court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] misleading the jury[.]" Rule 11-403. Defendant's challenge limits our inquiry to whether the evidence was helpful

36

to the jury under Rule 11-702 and whether it was so unfairly prejudicial as to warrant exclusion.

{53} The evidence of the thigh and abdomen swabs is probative because it could assist the jury in choosing between the different theories presented regarding the events of that night. This evidence is unique in that it could be used to support either the State's or Defendant's theory, depending on what testimony the jury found credible or persuasive. If the jury were to find the DNA evidence persuasive, it may find the State's theory that Defendant committed sexual offenses against Victim to be more probable. The absence of quantifiable DNA, however, weighs in favor of Defendant's theory that although he was in the home, he did not commit the sexual offenses. In challenging whether the evidence would be helpful to the jury, Defendant challenges the weight that the evidence should be given. We leave that question to the jury. *See Anderson*, 1994-NMSC-089, ¶ 58 (holding that "questions about the accuracy of [DNA] results goes to the weight of the evidence and is properly left to the jury"). We conclude that the evidence challenged by Defendant—the DNA results of thigh and abdomen swabs—was helpful to the jury in understanding the limits of the DNA found and determining facts at issue. *See* Rule 11-702.

{54} We therefore turn to an assessment of whether the evidence in question was so prejudicial that the district court abused its discretion by failing to exclude it. The

State presented the testimony regarding the thigh and abdominal swabs in a very narrow context and with careful limitation. The State's witness explained that the results rendered from the thigh swab were "weak" because of the low quantity of DNA found. She also acknowledged that there was no connection between the thigh swab results and Defendant. In addition, defense counsel vigorously cross-examined the State's expert regarding the statistical likelihood that Victim contributed to the abdomen swab's DNA mixture. Defendant also presented his own expert to attack the conclusion that Victim could not be eliminated as a contributor to the lower abdomen DNA mixture by testifying that a "degree of inaccuracy" existed in the abdomen swab results.

{55}    We acknowledge Defendant's argument that DNA evidence has the potential to be particularly persuasive to a jury. *See Anderson*, 1994-NMSC-089, ¶ 63 ("[T]he aura of infallibility surrounding DNA evidence does present the possibility of a decision based on the perceived infallibility of the evidence[.]"). Our Supreme Court has held, however, that the damaging nature of DNA evidence and the associated potential for prejudice does not require exclusion where an adequate factual basis has been laid for the testimony and the defendant has the opportunity to cross-examine the state's expert and present his own rebuttal expert. *See id.* (acknowledging vigorous cross-examination and presentation of rebuttal experts as "the traditional

and appropriate means of attacking shaky but admissible evidence" (internal quotation marks and citation omitted)). Defendant was afforded both those opportunities here and took advantage of them. We conclude that Defendant was not so unfairly prejudiced that the district court was required to exclude the DNA evidence of the thigh and abdomen swabs. As such, the district court did not abuse its discretion.

## IV.    CONCLUSION

{56}    We affirm Defendant's convictions for CSP and CSC, as well as the district court's denial of Defendant's motion for a mistrial. We remand for a new trial on Defendant's conviction for kidnapping because the instructions given to the jury were erroneous, noting that the State presented sufficient evidence to support Defendant's conviction on the charge. We vacate Defendant's conviction for aggravated burglary as violative of the prohibition against double jeopardy.

{57}    **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**HENRY M. BOHNHOFF, Judge**